## No. 13,743.

BIESER, RECEIVER *v.* IRWIN ET AL.
(72 P. [2d] 271)

Decided September 20, 1937.

Mr. Addison M. Gooding, for plaintiff in error.

Mr. Joseph K. Bozard, for defendants in error.

*En Banc.*

Mr. Justice Hilliard delivered the opinion of the court.

Action on a promissory note by Bieser, as receiver of the First National Bank of Steamboat Springs, against Strange, Harwig, Earll, Chase, Holderness, Beverly, Stees, Hanks, Morgan and Irwin. Judgment entered against Strange; but for all other defendants. The receiver prosecutes error.

Briefly, Harwig, not an endorser, appears to have enjoyed favor because the trial court believed the obligation was not personal as to him; and the other successful defendants, although they were endorsers, for like reason and because they did not have notice of dishonor.

Strange, although the debt was not personal, suffered adverse judgment because he was an endorser and did have notice of nonpayment. He does not complain. The note reads as follows:

"$3800.         Steamboat Springs, Colo., March 18, 1930. One year after date, for value received, we promise to pay to the order of The First National Bank of Steamboat Springs, Thirty-eight hundred dollars, with interest at the rate of eight per cent per annum from date, payable semi-annually until paid; and, having deposited with said bank as collateral security note of E. A. Strange secured by trust deed, we hereby authorize said bank or assigns, upon the non-payment of this note, to sell said collateral at public or private sale at its option, and without notice or demand, and apply the net proceeds to the payment of this note or any other indebtedness of the undersigned to the said bank or assigns, which may be due or past due. Due March 18, 1931.

E. A. Strange, Trustee,
Chas. Harwig, Pres.''

Signatures of defendants, Harwig excepted, are on back of the note.

The errors assigned are conprehended within the receiver's contentions: (1) That notice of nonpayment, in full requirement, as said, was given each defendant personally; (2) that defendant Strange, to whom notice of dishonor was given, was agent for all other defendants, as further premised; (3) that by their long continued course of dealing, the note sued on being but the last of many renewals by them, defendants waived notice of dishonor; (4) that defendants are liable primarily. As to defendant Harwig the claim is that, notwithstanding his novel relation to the matter, the note exhibited is his personal obligation.

It appears that the original debt had its genesis in building activities of an Odd Fellows Lodge at Steamboat Springs; that in April, 1920, members of the "Lodge" incorporated the Fraternal Hall Company, and sold stock

to many members, some of whom gave notes in payment, and these notes were used as collateral for the company's note at the bank; that January 31, 1926, the hall company, still indebted to the bank in the sum of $3,990, gave its note due in ninety days, on the back of which were the signatures of defendants Earll, Beverly, Harwig, Hanks, Chase and Holderness; that April 30, 1926, the company gave a new note in the same sum and bearing on the reverse the names of Earll, Beverly, Harwig, Stees, Chase and Holderness; that July 30, 1926, the company renewed the note in the sum of $3,890, with the names of all defendants on the back; that October 31, 1926, the note was again renewed for $3,890, signed on the back by Earll, Beverly, Irwin, Holderness and Harwig; that December 30, 1926, there was renewal in the sum of $3,880, all defendants signing on back of the note. It is reasonably clear that at some time soon after the maturity of the note dated December 30, 1926, the hall company gave its deed of trust, which either ran directly in favor of the bank, or was made available in that behalf, on certain property to secure the same indebtedness. In time foreclosure of that trust deed was had and purchase was made by defendant Strange as trustee for the hall company. Subsequently and before March 18, 1930, date of the note in action, he transferred the certificate of purchase to himself individually, and took public trustee's deed in his own name, all pursuant to an understanding between the bank and the hall company, to the effect that the latter's obligation and the security on the same property should continue. To that end, as the record imports, defendant Strange, as trustee, and defendant Harwig, as president of the hall company, gave the note here, and pledged as collateral defendant Strange's personal note in the same sum running to defendant Harwig, then president of the hall company, and which he endorsed as president, said note being secured by deed of trust on the property originally owned by the hall company, on which foreclosure of an earlier trust deed had taken place, as

already related, pursuant to which Strange had obtained title. The collateral note is dated March 22, 1930, four days later than the one in action, but notations thereon make clear that one note is collateral to the other. March 25, 1930, Strange conveyed the property, on which he had given the trust deed, to the Odd Fellows Lodge. Later still, foreclosure of the trust deed mentioned in the collateral note was had, as the result of which there was credited on the note to the bank the sum of $467.40. Other credits (except $10 by a Mr. Cook) were the result of payments by the Odd Fellows Lodge. The controlling facts may be said to be: (1) That the obligation to the bank, of whatever date, and however evidenced, was not based on the personal indebtedness of defendants in error; (2) that by endorsement of the note of January 31, 1926, and the procession of renewing notes throughout that year, in each of which there was a provision of waiver of notice of nonpayment, some or all defendants in error had made themselves liable; (3) that on the note in action, unlike the others endorsed by defendants, there was no such waiver. We discuss the points urged for reversal as outlined in an early paragraph of this opinion.

1. The evidence that notice of nonpayment was given directly to defendants in action (except Strange, not complaining), was not convincing, and all denied receipt of notice. The court's general finding in favor of defendants in error indicates the claim that notice was given was not credited.

2. We think that Strange was not the agent of the other defendants at all, and assuredly not for the purpose of receiving notice of nonpayment. On the contrary, his relationship in representation, as we perceive, was as trustee of the hall company, maker of the note and agent of the bank, not as agent of the endorsers of the note. The banker testified that he found it difficult to get the endorsers to sign, and Strange agreed "with us to see them, and he would see them, and bring the

notes in.'' When we recall that none of defendants in error was individually indebted to the bank, and that liability would not attach unless and until he endorsed the obligation given by the debtor, the logic is that the bank, not the prospective endorser, would be urging endorsement; consequently Strange agreed ''with us to see them,'' said the banker. Since from the beginning, as seems clear, defendants in error were endorsers, primary liability never attended; but on earlier notes, had enforcement been sought, their formal waiver of notice of nonpayment would have been equivalent to such liability. On the note in action, however, as we have seen, there was an absence of waiver. Plaintiff in error could only avail himself of the secondary liability of defendants in error on that note by giving notice as provided in the Negotiable Instruments Act. Such notice was not given.

3. We think, as the trial court evidently concluded, that, whatever went before, including the execution of the notes of 1926, always endorsed by some, and occasionally by all, of those sought to be held here, and whatever other notes there may have been, and however signed or endorsed or otherwise secured, such transactions did not establish a course of dealing in the sense that the current note of any period was not the controlling contract. Necessarily, each succeeding note supplanted the one next before, and became the existent obligation in relation to the indebtedness.

4. Adverting again to the fact that defendants in error were not borrowers of the money creating the indebtedness, and recalling that throughout the record it appears that all concerned regarded them as endorsers, the trial court's conclusion to that effect seems well founded. We regard as important the fact that at the close of the testimony—in the light of full revelation—plaintiff in error amended his pleading to conform with the theory that defendants in error were endorsers. We do not think primary liability attended.

It remains to determine as to the liability of

defendant in error Harwig. Harwig's signature to the note in action was sought and obtained solely because he was president of the hall company. He did not endorse the note as did Strange, trustee for the company, all as we have seen. The banker testified that when Harwig signed the note, he "was not indebted to us personally." That Harwig was, and for years had been, president of the hall company, was known to all concerned. On previous notes, so far as exhibited, the name of the company appeared, but there, as well as here, Harwig's name with "President" following, was always subscribed to the obligation. It was the manner adopted by the parties in the purpose of all to bind the hall company. Standing unexplained, as on this note, except as descriptive of the person, the word "President" added to the name of the signatory was without significance. *Lewis v. Mutual Life Ins. Co.*, 8 Colo. App. 368, 46 Pac. 621. Prima facie, in the circumstances of his signature, Harwig was bound; but only so. "The fact that the word was not so intended, but was understood by the contracting parties as indicating that the contract was signed in a representative capacity, may be shown by parol testimony." *Rhone v. Powell*, 20 Colo. 41, 36 Pac. 899. See also *Hager v. Rice*, 4 Colo. 90. The "better rule is that where words which may be either descriptive of the person, or indicative of the character in which he contracts —such as 'agent,' 'trustee,' or the like—are affixed to the name of the contracting party, prima facie they are descriptive of the person only; but the fact that they were not so intended by the parties, but were understood as determining the character in which the party contracted, may, as between the original parties, be shown by extrinsic evidence." 3 R. C. L., p. 1097, §305. It abundantly appears, we think, that it never was the intention of the bank management and Harwig, or either of them, that the latter was, or should be, personally bound by his signature on the note here or of any note in course of

the matter, except only when he was an endorser—a relation not obtaining on the present note.

We think the trial court proceeded to enlightened judgment. Let there be affirmance.

MR. JUSTICE BAKKE dissents.